UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LOGAN JAMES BARNHART (6),<br><br>Defendant. | Case No. 21-cr-035 (RC) |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
FOR A REDUCTION IN SENTENCE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant Logan James Barnhart's motion for a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(a) and U.S.S.G. § 1B1.13(b)(1)(B), (b)(1)(C) and (b)(5) (ECF 420, the "Motion" or "Mot.").[1]  The defendant has failed to meet the criteria for either request.  The Court should deny the Motion.

**BACKGROUND**

**A.  The Instant Offense**

The facts of this case are described in detail in the Statement of Offense for the Change of Plea Hearing (ECF 235), the PSR (ECF 272), and the government's memorandum in aid of sentencing (ECF 284).  In brief, the defendant was a violent participant in the attack on the U.S. Capitol on January 6, 2021.  The defendant joined the mob attempting to forcibly breach the U.S. Capitol building at an arched entrance (the "Archway") on the Lower West Terrace ("LWT") to a passageway (the "Tunnel") leading to the interior of the building, which police officers defended

---

[1] Although titled as a "motion for a reduction in sentence," it appears that Barnhart's motion is one for compassionate release.

1

for more than two hours that day. The mob in this location – and, in particular, Barnhart and his co-defendants -- attacked a line of police officers who were positioned in the Archway. During the course of this attack, Barnhart grabbed an officer's neck and torso and dragged him in a prone position from the police line, out of the Archway, and down a set of stairs into the violent mob, where the officer was further attacked with weapons, including a flagpole and a baton, and sustained physical injuries. Minutes later, Barnhart returned to the police line in the Archway where other rioters were assaulting the line of officers by slamming riot shields into them, striking them, and throwing objects at them. Barnhart joined these rioters in charging against the police line. Barnhart then approached the line of officers wielding a flagpole and used it to strike the officers.

### B. Procedural History

On November 17, 2021, a federal grand jury returned a superseding indictment, charging twenty-four counts against nine defendants. The indictment charged Barnhart in six of the counts:

- Count Ten: violation of 18 U.S.C. § 111(a)(1) and (b) and § 2 (Assaulting, Resisting, or Impeding Certain Officers or Employees and Inflicting Bodily Injury or Using a Deadly or Dangerous Weapon, and Aiding and Abetting);

- Count Fourteen: violation of 18 U.S.C. § 231(a)(3) (Obstruction of Law Enforcement During Civil Disorder);

- Counts Twenty-One, Twenty-Two, and Twenty-Three: violations of 18 U.S.C. §§ 1752(a)(1), (2), and (4) (Knowingly Entering or Remaining in any Restricted Building or Grounds, Disorderly and Disruptive Conduct in any Restricted Building or Grounds, and Engaging in Physical Violence in any Restricted Building or Grounds);

- Count Twenty-Four: violation of 40 U.S.C. § 5104(e)(2)(F) (Violent Entry and Disorderly

Conduct on Capitol Grounds).

On, September 28, 2022, Barnhart pleaded guilty, pursuant to a plea agreement, ECF 234, to Count Ten, the assault of Officer B.M. In anticipation of sentencing, the PSR writer recommended a 57-month sentence (ECF 273); the government recommended 63 months (ECF 284); and defense counsel recommended a sentence "well below" the Guideline range (ECF 294).

On April 13, 2023, after submissions and argument by both parties, the Court sentenced the defendant to 36 months of incarceration. The Court listed the Guideline range as 41 to 51 months, and varied downward owing to Barnhart's medical issues. ECF 310 (Barnhart "credibly asserts that the GPS ankle monitor caused him physical harm.")[2]

Barnhart's Motion was docketed on February 5, 2024.  The defendant seeks a reduction from 36 months' imprisonment to a period of home confinement.  Mot. at 17.  Barnhart has been incarcerated for approximately eight months, with a projected release date of December 24, 2025.

## ARGUMENT

Barnhart requests compassionate release under 18 U.S.C. § 3582(c)(1), arguing that extraordinary and compelling circumstances warrant his release pursuant to U.S.S.G. § 1B1.13. Barnhart cannot satisfy his burden to show that the factors set forth in 18 U.S.C. § 3553(a) warrant any reduction in sentence or release.

    **A. Applicable Law**

Before the enactment of the First Step Act in 2018, only the Bureau of Prisons could seek compassionate release for a defendant. *See United States v. Long*, 997 F.3d 342, 348 (D.C. Cir.

---

[2] *See also* Barnhart Sentencing Transc. at 52. ("I'm also cognizant that the defendant has been subject to significant restraints on his liberty for 18 months or so and asserts that the GPS ankle monitor caused him permanent physical injury that has adversely affected his health going forward. So I intend to consider these factors as well.")

2021). With the passage of the First Step Act, however, defendants now may file for compassionate release on their own behalf. *See id.* As amended by the First Step Act, § 3582(c)(1)(A) now states in relevant part as follows:

(c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
    (1) in any case—
        (A) the court … upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –

        (i)    extraordinary and compelling reasons warrant such a reduction; . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

As the movant, the Defendant bears the burden to establish that early release is warranted. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014). To do so, the defendant must show (a) that he has exhausted his right to appeal the BOP's failure to seek compassionate release on his behalf or that 30 days have lapsed since he sought a reduction in sentence from the warden of his BOP facility; (b) the existence of extraordinary and compelling circumstances sufficient to warrant his early release; and (c) that weighing the applicable § 3553(a) factors counsel in favor of early release.

In *Long*, the D.C. Circuit held that the policy statement set forth at U.S.S.G. § 1B1.13 "is not applicable to compassionate release motions filed by defendants." 997 F.3d at 347. The Court

of Appeals later held, however, that although Section 1B1.13 is not binding in connection with motions filed by defendants, courts may consider it as "persuasive authority." *United States v. Jenkins*, 50 F.4th 1185, 1195 (D.C. Cir. 2022). That section sets out several categories of circumstances that are "extraordinary and compelling," including serious medical conditions. U.S.S.G. § 1B1.13(b)(1)-(2).

### B. The Defendant Has Not Shown Extraordinary and Compelling Reasons Warranting Compassionate Release.

The defendant claims that the following circumstances are "extraordinary and compelling" such that they warrant his release: (1) The defendant's blood clot was not addressed in a timely manner, leading to compartment syndrome. Mot. at 1-3. (2) He has not received adequate follow-up for his prior heart attack. *Id* at 3. (3) His cholesterol has not been properly managed. *Id*. (4) The BOP have failed to remove his teeth. *Id.*

None of these assertions are true. As Dr. Michael Randolph details in the attached affidavit, the BOP has properly addressed the defendant's medical issues. *See* Gov. Ex. 2 (filed under seal). The defendant came to the BOP with significant medical issues. Gov. Ex. 2 at ¶ 4. Those conditions have been "managed in accordance with the applicable standard of care and BOP policy." *Id*. at ¶ 5. Since his arrival at the BOP, the defendant "has received extensive and comprehensive medical care," *id*., as detailed in paragraphs 6-30 of Dr. Randolph's affidavit. This care included repeated appointments with his primary care physician, other FMC Lexington physicians, a hematologist, a cardiologist, a vascular surgeon, a physical medicine and rehab specialist, a vascular clinic specialist, and dental professionals. *Id*. at ¶¶ 6-30. He has been seen by BOP doctors at FMC Lexington and private doctors through the University of Kentucky. *Id*. Doctors from the University of Kentucky operated on the defendant on December 13, 2023. *Id*. at ¶¶ 18-19. Throughout his incarceration, the defendant has been prescribed medication to address

his needs and pain levels. *Id*. at ¶¶ 6-30. By January 24, 2024, the defendant was "able to walk without difficulty," and his "leg feels back to normal." *Id*. at ¶ 26. As recently as February 24, 2024, the defendant reported that he was "doing well," and the medical staff reported that he was healing. *Id*. at ¶ 27.

When considering how best to weigh Dr. Randolph's affidavit against that of Drs. Mushero and Solfisburg, it is worth noting that neither Drs. Mushero nor Solfisburg has actually seen the defendant. They are opining solely based upon a review of his medical records. Dr. Randolph is Mr. Barnhart's primary care physician. Gov. Ex. 2 at ¶5. Second, Drs. Mushero and Solfisburg are not unbiased. In her biography on the Boston University website, Dr. Mushero explains that her "work focuses on medical parole and decarceration." *See* https://www.bumc.bu.edu/camed/profile/nicole-mushero/. Dr. Solfisburg graduated from medical school in 2021 and notes that her affidavit is filed "under the supervision" of Dr. Mushero. *See* ECF 420-1 at 1. Finally, Dr. Randolph has reviewed the defendant's medical records through February 24, 2024, whereas Drs. Mushero and Solfisburg were relying on records ending on January 8, 2024. (The defendant's additional medical records from January 8, 2024 through February 24, 2024 have been filed under seal as Government Exhibit 1.) Not surprisingly, given that the operation occurred in mid-December 2023, the defendant has made significant strides in the last two months.

In short, none of the Defendant's medical issues rise to a level that would warrant his release. When Congress enacted the 1984 Sentencing Reform Act, which included the original compassionate release statute, the term 'extraordinary' was understood to mean 'most unusual,' 'far from common,' and 'having little or no precedent.'" *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021) (quoting *Webster's Third New International Dictionary: Unabridged* 807 (1971)). Indeed, "[c]utting short a duly authorized prison sentence is, in the statute's own words,

an 'extraordinary' step to take, and it requires a justification which is more than sympathetic and indeed nothing short of 'compelling.'" *United States*, v. *Shabazz*., No. 17-cr-43 (JDB), 2021 WL 4306129, at *3 (D.D.C. Sept. 22, 2021). Here, the medical circumstances, which the defendant cites, have been properly addressed and therefore do not warrant the extraordinary measures envisioned by the statute.[3]

### C. The 18 U.S.C. § 3553(a) Factors Weigh Against Release.

Under both 18 U.S.C. § 3582(c)(1)(A) and 18 U.S.C. § 3582(c)(2), the Court must also consider the factors set forth in 18 U.S.C. § 3553(a) in its analysis. *See* 18 U.S.C. §§ 3582(c)(1)(A), 3582(c)(2) (the Court may reduce a term of imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are applicable"). Those factors include "the nature and circumstances of the offense," "the history and characteristics of the defendant," and also the need for a sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and "to provide the defendant with needed educational or vocational training, medical care, and other correctional treatment in the most effective manner." All of those factors weigh in favor of a lengthy sentence.

---

[3] Statutory structure confirms this conclusion. The compassionate-release statute must be interpreted in the context of the broader federal sentencing scheme. *See Abramski v. United States*, 573 U.S. 169, 179 (2014) ("[W]e must (as usual) interpret the relevant words not in a vacuum, but with reference to the statutory context, 'structure, history, and purpose.'"). A "general rule of finality" applies to a final criminal judgment, which "may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010). In general, "compassionate release" means immediate release for compassion-related reasons based on extreme life circumstances, such as medical circumstances. *See, e.g.*, *Black's Law Dictionary* (11th ed. 2019) (definition of "medical parole," "[a]lso termed compassionate release," under entry for "parole" is defined as "[t]he release of a terminally ill prisoner to a hospital, hospice, or other healthcare facility.").

Further, even where a defendant has established an extraordinary and compelling reason for release, the Court may reduce his sentence only if the balance of the § 3553(a) factors favor release. *See United States v. Edwards*, No. 03-234 (JDP), 2020 WL 5518322 at *4 (D.D.C. September 12, 2020) ("[E]ven if Mr. Edwards *had* presented "extraordinary and compelling reasons" for release, the Court may reduce his term of imprisonment only if the balance of the § 3553(a) factors favor his release." (emphasis in original)); *see also United States v. Holroyd*, 464 F. Supp. 3d 14, 19 (D.D.C. 2020) (TNM) ("If a defendant still poses a danger to the community or if the balance of factors under § 3553(a) favor continued imprisonment, these are independent reasons to deny a motion for compassionate release."); *United States v. Sears*, 19-cr-21, 2020 WL 3250717 at *2 (D.D.C. June 16, 2020) (denying compassionate release to inmate with diabetes, hypertension and asthma who had established extraordinary and compelling reasons, because "this Court does not, and cannot, find that a reduction in [Defendant]'s term of imprisonment is consistent with the § 3553(a) factors at this time").

The Court assessed the 18 U.S.C. § 3553(a) factors prior to and at the defendant's sentencing approximately ten months ago and varied downward significantly based in large part on the same medical issues that the defendant raises again now. At the time, taking into consideration his medical issues, the Court found that a 36-month sentence was sufficient, but not greater than necessary, citing in part the violent nature of the defendant's conduct, and the danger posed to the community by individuals who are willing to attack law enforcement officers during a riot.[4] Because the Court was aware of the defendant's medical issues and already took them into

---

[4] *See* Barnhart Sent. Transc. at 46. ("Defendant fits comfortably within the group of rioters that actually attacked law enforcement. He was part of some of the most violent clashes that day that took place at the archway tunnel at the lower west terrace. Defendant stood in the crowd of rioters and watched the attacks on law enforcement as it unfolded.") *Id*. at 49 ("Since defendant's arrest,

account at his original sentencing, it should not change its sentence now. *See United State v. Merisse*, 06-cr-42 (JDB), 2023 WL 6847034, at *7 (D.D.C. Oct. 17, 2023) (the defendant "has not identified any relevant factual or legal change that would allow the Court to reconsider [disparities between his sentence and those of his co-defendants]. As the Sixth Circuit has explained, 'identifying "extraordinary and compelling reasons" is a task that focuses on post-sentencing ... developments.'" (quoting *Hunter*, 12 F.4th at 569)).

The § 3553(a) factors do not favor release and so the Court should not grant the defendant's Motion.

## **CONCLUSION**

For the reasons above, and based on the entire record, defendant has not met his burden to show that he is entitled to a sentence reduction. Accordingly, the Court should summarily deny defendant's motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

_____
ALEXANDRA F. FOSTER
D.C. Bar No. 470096
BENET J. KEARNEY
N.Y. Bar No. 4774048
Assistant United States Attorneys
Alexandra.Foster@usdoj.gov/Benet.Kearney@usdoj.gov
(619) 546-6735/(212) 637 2260

---

he has been on home confinement and has maintained steady well-paying employment and has, by all accounts, done very well on release status. But an individual who has directly and brazenly attacked law enforcement officers is inherently dangerous to the public because, in my estimation, one who does not hesitate to attack a law enforcement officer would not hesitate to attack any member of the population who angers him.")