United States District Court
For The District of Columbia

| | |
|---|---|
| **United States of America,** | |
| v. | Case No. 21-cr-35-6 (RC) |
| **Logan James Barnhart,** | |
| **Defendant.** | |

**Factual Updates to Motion for Reduction of Sentence
Under 18 U.S.C. § 3582(c)(1)(A)**

Logan Barnhart, through undersigned counsel, respectfully updates the Court with facts in support of his motion for a reduction in sentence. *See* Mot., ECF No. 420 (Feb. 5, 2024); Reply, ECF No. 463 (Apr. 10, 2024).

Mr. Barnhart has generally healed from the thrombolysis surgery and fasciotomies to treat compartment syndrome, though he will always have the massive scars after the delay in treatment. Even though he is not in pain, however, his leg swells regularly and he has been told this swelling will last for several years. In addition, when Mr. Barnhart initially experienced blood clots prior to his incarceration in BOP custody, three of his major arteries were clogged. Only one of the three was cleared, and it was this one that reclotted soon after he reported to prison, requiring intervention that only belatedly came in December 2023 to clear it again. According to Mr. Barnhart, when he last saw his vascular surgeon at the University of Kentucky, his surgeon stated that he wanted to try to clear the remaining two arteries once Mr. Barnhart had recovered from his recent procedures. While Mr. Barnhart is grateful to the surgeon, he is terrified of recovering from these procedures within the BOP given his experiences after his

fasciotomies, which included his release from the hospital into a lightly-staffed prison, having his pain medication cut by two-thirds so that he was in unrelenting pain, and begging to have his wound vac removed because of the pain so that the wound on this side healed more slowly.

Nothing has changed since Mr. Barnhart's April 2024 filing to improve staffing levels at the BOP or inspire confidence that Mr. Barnhart's concerns will be better addressed next time. "Staffing shortages, with corrections officers and medical personnel, are among the biggest obstacles facing the federal prison system," according to a recent report by the Justice Department's inspector general.[1] After a surprise inspection to an FCI in Oregon, Inspector General Michael Horowitz explained, "It's a problem that is at least 20 years in the making. It's not going to get fixed overnight. But what these inspections show us [is] how serious the problem has now become. It is deeply concerning when you go to a facility like Sheridan and you hear from the staff, correctional officers, health care workers, educators, that they can't do the jobs that they're there to do and they want to."[2] The inspection revealed that there were not enough correctional officers to escort inmates to medical appointments outside the prison, leading to canceled appointments.[3] And without enough nurses or doctors, inmates were not getting the lab

---

[1] Jaclyn Diaz, *Lack of staffing led to 'deeply concerning' conditions at federal prison in Oregon*, NPR, All Things Considered (May 22, 2024), available at https://www.npr.org/2024/05/22/1252764293/sheridan-prison-staff-issues-doj-inspection (citing February 2024 report available at https://oig.justice.gov/reports/evaluation-issues-surrounding-inmate-deaths-federal-bureau-prisons-institutions).

[2] *Id.*

[3] *Id.* A similar finding was made in March 2022, when the Inspector General issued a report stating, "'we found that the BOP faced challenges in transporting inmates to off-site appointments which resulted in a frequent need to reschedule appointments that could delay an inmate's healthcare'"; "'BOP also did not have a process in place to monitor how long an inmate waited to receive care after a cancelled appointment'"; and because it had no systems to monitor either issue, "'we believe it is difficult for the BOP to determine whether inmates are receiving care within the required community standard.'" Walter Pavlo, Federal Bureau Of

2

tests or X-rays they needed.[4]  Mr. Barnhart is well-founded in his concern that undergoing medical procedures while still incarcerated in BOP custody will lead to unnecessary and preventable pain, and that his tests and procedures will be delayed to his detriment.

In addition to his vascular surgeon's recommendation related to his other arteries, Mr. Barnhart reports that he recently had an echocardiogram with bubble study performed but has yet to receive the updates on his heart health.  In fact, a telemedicine appointment on July 16 to review the results of his echocardiogram was unexpectedly canceled.  As this Court may remember, Mr. Barnhart had a heart attack, which required heart surgery while on pretrial release, and should have received echocardiograms every six months.  However, the BOP did not do so and repeatedly discontinued his statin despite its efficacy in protecting heart health.  *See* ECF No. 420 at 4, 6-7, 11-13.  And while an echocardiogram was finally ordered to be completed by March 22, 2024 according to the BOP's own orders, *see* Gov't Supp. Opp'n Ex. A at 54, Mr. Barnhart did not actually receive it until mid-July, *i.e.*, more than 13 months after he entered BOP custody.

Moreover, Mr. Barnhart's blood tests have repeatedly measured high quantities of creatine kinase.  *See* Gov't Supp. Opp'n. Ex. A at 133 (2521 U/L with reference range of 44-196 U/L), 128 (1266 U/L with reference range of 30-200 U/L).  Creatine kinase is an enzyme that

---

Prisons' Medical Care Falls Short Of Its Own Policy, Forbes (Aug. 19, 2022), available at https://www.forbes.com/sites/walterpavlo/2022/04/19/federal-bureau-of-prisons-medical-care-falls-short-of-its-own-policy/?sh=c1cb70f5eab3.

[4] Diaz, *Lack of Staffing*.

can break down in small amounts through the usual wear and tear on muscles, but higher amounts can mean that your muscles, brain, or heart tissues are damaged. [5]

In addition, Mr. Barnhart's blood tests have repeatedly measured high quantities of urea nitrogen. *See* Gov't Supp. Opp'n Ex. A at 124 (27 mg/dL with a reference range of 7-18 mg/dL). Urea nitrogen is a waste product produced by the liver when the body breaks down protein, and high levels can be indicative that the kidneys are not working properly.[6] It is unclear from the current medical records what, if anything, the prison is doing to monitor or treat these higher levels of urea nitrogen.

Finally, Mr. Barnhart was supposed to have another blood test today, July 18, 2024, but it was canceled.

Thankfully Mr. Barnhart finally had several of his painful teeth pulled. *See* Gov't Supp. Opp'n Ex. A at 101. Mr. Barnhart reports that after the extractions, he was able to see his jawbone where one of the teeth had been removed. Yet to treat the pain afterwards, they did not give him any painkillers other than Tylenol, and when it ran out after three or four days, he was still in intense pain but there was no sick call that day to prescribe him more Tylenol. The next day when he went, there was no doctor on call, and therefore he could not get more Tylenol that day either. Mr. Barnhart was in pain for about 10 days after the extraction even with the Tylenol. Thus, although he has another tooth that it is recommended for extraction, he is awaiting his release to have this final tooth pulled because he is not currently in pain from it and he does not

---

[5] *See* Nat'l Library of Congress, *Creatine Kinase*, MedlinePlus, available at https://medlineplus.gov/lab-tests/creatine-kinase/.

[6] *See* Nat'l Library of Congress, *BUN (Blood Urea Nitrogen),* MedlinePlus, available at https://medlineplus.gov/lab-tests/bun-blood-urea-nitrogen/.

want to endure the same pain he had after his other teeth extractions in BOP custody. *See id.* at 110-11.

Mr. Barnhart has been imprisoned for 13 and ½ months now. During that time he has endured a blood clot in his leg for months, complications from delays in diagnosing and treating the blood clot, and intense pain from the fasciotomies. He has only belatedly received the echocardiogram that he should receive every six months. He experienced excruciating pain with inadequate pain management after his teeth extractions. His projected release date is in approximately 17 months, on December 24, 2025. Rather than require that he remain imprisoned during his remaining procedures, this Court should allow his immediate release with conditions of home confinement that would allow him to attend to his medical needs while maintaining restrictions on his liberty.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
JOANNA MUNSON PERALES
Research & Writing Attorney
Federal Public Defender's Office
625 Indiana Ave, NW, Suite 550
Washington, D.C. 20004